THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GARY SEXTON, Defendant-Appellant.

Fourth District   No. 4—82—0857

Opinion filed October 28, 1983.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Kevin T. McClain, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

Defendant was convicted of the offense of residential burglary and sentenced to a term of 4 years' imprisonment. He appeals from the judgment, contending (1) that the trial court erred by refusing to instruct the jury on the elements of the offense of burglary and (2) that the trial court erred in failing to suppress evidence obtained by the police as a result of an improper search and seizure.

The defendant admitted that he broke into a house on March 25, 1982, located at 1901 East Oakland Avenue, Bloomington, intending to commit a theft. He took a medical bag from the basement of the house. He testified that he believed that the house was unoccupied. The grass around the house was about a foot and a half high and a quantity of mail was wedged between the front doors of the house. He also testified that he had never seen a car in the driveway of the house and that the grass was always high.

Dr. Thomas S. Cumming testified that he owned a house at 1901 East Oakland, Bloomington. On March 25, 1982, Dr. Cumming did not actually reside in the house on Oakland Avenue. His primary residence was at 302 Jayne Street, Heyworth, Illinois. He testified that occasionally he stayed overnight or spent the weekend in the Oakland Avenue house. Dr. Cumming testified that he "used to stop in every other day or so to pick up any mail and check on the furnace during the winter, air conditioning in the summer." The last people to actually live in the house were Bob Finnegan and Dr. Cumming's daughter, Cheryl. Dr. Cumming was not sure when Bob and Cheryl moved out, but believed it was sometime between January and March of 1982.

Defendant contends that the record contains evidence supporting his position that the building located at 1901 East Oakland was not "the dwelling place of another" within the meaning of the residential burglary statute. (Ill. Rev. Stat. 1981, ch. 38, par. 19—3.) Defendant asserts that he was entitled to have the jury instructed on the offense of burglary. We disagree.

A person commits the offense of residential burglary when he "*** knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." (Ill. Rev. Stat. 1981, ch. 38, par. 19—3.) The term "dwelling" is defined as "a building or portion thereof, a tent, a vehicle, or other enclosed space which is *used or intended for use* as a human habitation, home or resi-

dence." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 2—6.

■ It is clear from the language used by the legislature that the residential burglary statute was intended to apply to burglaries of structures intended for use as residences, regardless of whether the structure was being actively used as a residence at the time the burglary was committed. In enacting the residential burglary statute, the legislature sought to deter burglaries of citizens' homes by making such burglaries Class 1 felonies, differentiating those burglaries from the offense of simple burglary, which is a Class 2 felony. This legislative purpose of deterring residential burglaries would not be served by making the application of the statute dependent upon the wholly fortuitous circumstance of whether a structure intended to be used as a residence was actually being used as a residence at the time the burglary was committed.

■ The evidence contained in the record relates, as a matter of law, only to the offense of residential burglary. Therefore, defendant was not entitled to a lesser included offense instruction on burglary, since the jury would only have been justified in returning a verdict on the greater offense of residential burglary. See *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378; *People v. DeRosa* (1941), 378 Ill. 557, 39 N.E.2d 1.

Defendant also claims that evidence resulting from an illegal seizure was admitted at trial. The record indicates that a warrant was issued authorizing a search of defendant's apartment for the following items:

> "Cannabis and hashish, a cannabis substance, and evidence of cannabis and hashish; plastic bags in which cannabis and hashish may be found; blond capsules and other pills marked RJS 109; controlled substances in a capsular pill form marked RJS 109; controlled substances and pills; paraphernalia used in ingesting, smoking or using cannabis and hashish including pipes, bongs and smoking devices; white powder; syringe; alcoholic beverages and their contents, U.S. currency."

During a search conducted on April 23, 1982, a black medical bag was found under defendant's dresser. The bag, according to the police report, contained several bottles of miscellaneous pills. Two hypodermic syringes and a stethoscope were also among the items found and seized by the police.

Officer Charles Crowe testified that he participated in the search of the defendant's apartment and interrogated the defendant on April 24, 1982. Officer Crowe confronted the defendant with the medical bag which was found in the defendant's apartment. Defendant told

Officer Crowe that he found the bag, but later admitted taking the bag from the basement of the house at 1901 East Oakland.

Defendant contends that the seizure of the bag was not authorized by the search warrant and that the seizure was therefore unlawful. (*Marron v. United states* (1927), 275 U.S. 192, 72 L. Ed. 231, 48 S. Ct. 74.) He also maintains that his oral statement should have been suppressed as a fruit of the illegal seizure. *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

We note that defendant did not move to suppress the introduction of this evidence before trial or include the alleged error in his post-trial motion. In the present case, however, the black bag and defendant's oral statements made after he was confronted with the bag by Officer Crowe were a significant portion of the State's case. Therefore, we believe it is proper to consider the question of the legality of the seizure of the black bag even though defendant did not raise the issue below.

■ In *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, the court discussed the applicability of the "plain view" doctrine to a situation where the police have a valid warrant to search an area for certain items specified in the warrant and during the search discover some other items of an incriminating nature. Such items are subject to seizure if: (1) the police have come upon the items in plain view during a lawful search; (2) the items are of incriminating character and this fact is immediately apparent to the police; and (3) the items were discovered inadvertently during the search. See generally 2 LaFave, Search and Seizure sec. 4.11, at 163 (1978).

In the case at bar, defendant does not contend that the search was unlawful or that the black bag was not in plain view. Further, it is clear from the record that the discovery of the black bag was inadvertent. Because Dr. Cumming did not realize the bag was missing until the police showed it to him following the seizure, the police were not looking for the bag at the time of the search.

■ We must, therefore, determine whether the incriminating nature of the bag was immediately apparent to the officers. Given the facts and circumstances surrounding the seizure, we are of the opinion that at the time of the search the officers had probable cause to believe that the bag was stolen. (2 LaFave, Search and Seizure sec. 4.11(b), at 167 (1978).) That the defendant had come into lawful possession of a medical bag containing several bottles of pills was unlikely. Also, the bag was found underneath a dresser in defendant's apartment, which would indicate that defendant was trying to conceal

the bag. Taken with the other items found in the search, we conclude that the incriminating nature of the bag was apparent to the officers when they found it under the dresser.

 We hold, therefore, that the seizure of the black bag was lawful under the requirements set forth in *Coolidge* and that the bag and defendant's oral statement made subsequent to the seizure were properly admitted into evidence. Because the seizure was proper, we need not discuss the question of defense counsel's competency in failing to move to suppress the evidence.

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.